In the Matter of the Petition of the BROOKLYN BAR ASSOCIATION and the QUEENS COUNTY BAR ASSOCIATION for an Inquiry by the Court into Certain Abuses and Illegal and Improper Practices Alleged in the Petition.

Second Department, March 21, 1928.

Attorney and client — conduct of attorneys — petition alleges illegal practice by attorneys in Second Judicial Department, including " ambulance chasing "— claim that said practice leads to congested calendars — investigation of condition of calendars ordered with special reference to illegal practices mentioned — investigation will be private — justice of Supreme Court sitting at Special Term will conduct investigation — petitioners will furnish counsel.

A petition presented to the Appellate Division, Second Department, by the Brooklyn Bar Association and the Queens County Bar Association alleges the existence of a certain illegal practice known as " ambulance chasing " and that as one result the calendars of the courts are crowded with cases which are not intended to be tried. While no facts are alleged showing specific instances,

the court takes notice of a condition that is apparently widespread. To the end that the condition if it exists may be righted the court directs an investigation of the condition of the calendars with special reference to certain alleged corrupt practices in connection therewith and cases thereon, including the practice of so-called " ambulance chasing " and the conduct of any attorneys with reference thereto and with reference to the procurement of unfair and unjust settlements as alleged in the petition.

The investigation will be conducted by a justice of the Supreme Court sitting at Special Term and will be private. The petitioners will furnish counsel to aid in the investigation. While the petitioners represent a part only of the Second Judicial Department, the investigation will cover the entire department.

MOTION for judicial inquiry as to certain practices of attorneys.

*William R. Bayes* and *Michael Furst*, for the Brooklyn Bar Association.

*August B. Klages*, for the Queens County Bar Association.

LAZANSKY, P. J. The Brooklyn and the Queens County Bar Associations, organized, among other things, to facilitate the administration of justice and to elevate the standard of integrity, honor and courtesy in the legal profession, have presented a petition to this court which recites that there exists in the Second Judicial Department a practice commonly known as " ambulance chasing," that is, solicitation by lawyers of their employment to prosecute damage cases on the basis of contingent fees, the amount of which is not fixed with reference to the nature or extent of the prospective services. It is represented that from this practice the following evils flow: Unfair agreements of retainer between lawyers and improvident and ignorant injured persons; valuable considerations paid or promised by lawyers to injured persons as an inducement to retain the lawyers; maintenance by lawyers and their agents of a system of obtaining prompt information from hospital employees and others of accidents and payment to them for such information; agreements by lawyers to pay costs of legal proceedings and the expenses for medical care of injured persons as an inducement to retain the lawyers; congestion of court calendars by unworthy causes which it is never intended to bring to trial; a false conception by lawyers engaged in this practice that the relationship between attorney and client is a commercial transaction in which the interest of the client plays an unimportant part, as a result of which unconscionable fees are charged, resort is had to corrupt practices and the violation of the obligations of duty to client, to the court, and to the public generally; there is often a race to the bedside of the injured person between those seeking retainers in behalf of lawyers and those acting for prospective defendants, who endeavor to obtain releases for small sums, as a result of

which retainers are obtained or settlements made at a time when the injured person is incapable of exercising a discerning judgment; the practice tends to impair public confidence in the courts and to retard the due administration of justice. Although it is stated that there are relatively few lawyers in this department who engage in systematic " ambulance chasing," it is alleged that the matter is one which has engaged the attention of the public and received general condemnation — in fact, has become a public scandal and brought discredit upon our judicial system. The court is asked to order that a judicial inquiry be made into the practices alleged to exist and into any other illegal or improper practices, and that upon the conclusion of the investigation all parties found to have been participating in any such practices be brought into court in some appropriate action or proceeding and dealt with according to law.

Not a single fact is given to substantiate these serious charges. It is a general arraignment of a vicious practice. It is needless to characterize this condition of affairs. It is a matter of common knowledge that it has been in existence for many years. While frowned upon by the courts and the bar generally, it has been permitted to continue and no real effort has been made to abate it, although the machinery to that end has always been available. However, it is urged that a strong sentiment has been aroused, not only among members of the bench and bar, but in the public generally, that this nefarious business must be brought to a speedy end. The court must not be slow to respond to such a petition if it has the power to act. The outstanding feature of the entire matter is, in effect, that the calendars of the court are crowded with cases, the attorneys in which are said to have obtained their retainers by corrupt means and because of those methods have tainted the causes with bad faith and falsehood.

Under our system of jurisprudence, actions and proceedings are generally initiated by process directed against the individual, and, to be judicial, must result in an enforcible determination. Were this a proceeding of the usual type, then, since it is not sought to arraign any individual to answer a charge and there is to be no adjudication, this court could not entertain the proceeding. But it is something quite different. It is sought here to invoke the power of the court to make an investigation of a system which has a direct bearing upon the orderly administration of justice by the courts. Attorneys and counselors at law are officers of the court and subject to the power and control of the Supreme Court. (Judiciary Law, § 88, subd. 2, as amd. by Laws of 1913, chap. 720.) The misconduct of attorneys is a subject of serious concern to the courts.

Attorneys are a part of the court and their deportment has an important bearing upon the strength and influence of the court. This is especially so in the matter of litigation. An attorney who brings into court a cause in which by his own acts he has been corruptly or unfairly retained, violates his oath of office and fails in the discharge of his duties to the court. It is one of the duties of the court to see that litigation is disposed of with reasonable dispatch. The attorney who places upon the calendar a cause which he knows is without merit or which should have been placed upon the calendar of an inferior court is guilty of gross deception and impedes the progress of the work of the court. He is using the power of the court for corrupt purposes. Such a person is likely to bring his client's claim into the temple of justice with a lie upon the lips of the witnesses. His conduct has a direct relationship to the business of the court. Calendar congestion is a matter of vital concern to the court, because it means justice delayed, if not denied. These matters being part of the court's own affairs, it necessarily has the power to ascertain the true conditions with reference thereto. Without doubt, it may take steps to ascertain if its integrity is being assailed and its honor violated by evil means. To investigate these conditions will not be the exercise of a new power, but a new exercise of a power which is a part of the court's very existence. While no specific charges are made and no individual is accused, the court is advised of the existence of these evils by bodies composed of men of high standing at the bar, whose duty and desire it is to aid the court in maintaining its integrity and influence. The court cannot ignore that which is being publicly proclaimed. It may be that these practices are engaged in only by a few; nevertheless it is a matter which requires quick and effective attention, now that the court's aid is sought with reference thereto.

The court has, therefore, concluded to follow, in part, the lead of the Appellate Division of the First Department (*Matter of Bar Association of City of New York*, 222 App. Div. 580), and to order an investigation into the condition of the calendars of the Supreme Court in the Second Judicial Department with special reference to certain alleged corrupt practices in connection therewith and cases thereon, including the practice of so-called "ambulance chasing" and the conduct of any attorneys with reference thereto and with reference to the procurement of unfair and unjust settlements as alleged in the petition. While the petition prays that an inquiry be made into the alleged corrupt practices and, upon the conclusion of the investigation, that parties found to have been participating in any such practice be brought into court in an

appropriate manner and dealt with according to law, the investigation to be ordered will be based upon a broader and more salutary purpose, to wit, if it be found that the calendars of the court have become congested by causes tainted with corrupt practices, appropriate court rules may be adopted according to law, and legislation may be had which will bring this condition of affairs to a speedy end and prevent a recurrence thereof. Although the application is made only by the Brooklyn and Queens County Bar Associations, it seeks an investigation throughout the department. The investigation will be made accordingly.

Although the court will assert its power to make a vigorous and effective investigation of the alleged wrongdoing, it must, at the same time, be careful to guard the good name of the innocent. A summons to attend a hearing, publicly advertised, might mean to those who are quick to condemn that the person summoned is involved in these corrupt practices, though he be entirely blameless. Furthermore, it is an investigation of a condition, and not of the acts of any designated person. Therefore, no one is entitled to a hearing. For these reasons, it has been determined that the inquiry shall not be conducted in public until the coming in of a report, after which such further steps will be taken as may be deemed appropriate and necessary. A justice of the Supreme Court will be designated to sit at a Special Term to conduct the investigation. It is expected that counsel will be furnished to aid in the investigation. The selection of counsel will be left to the petitioners and such other bar associations of the different counties of the judicial department as may be interested in this matter. An order in accordance with the foregoing views will be signed.

Present — LAZANSKY, P. J., RICH, KAPPER, HAGARTY and CARSWELL, JJ.

Motion for judicial inquiry as to certain practices of attorneys granted.