VAN WORMER v. KRAMER BROTHERS FREIGHT LINES, INC.

1. HIGHWAYS AND STREETS — AUTOMOBILES — NEGLIGENCE — PROXIMATE CAUSE.

Negligence of one employed to repair a street does not bar his recovery for damages for injuries sustained as result of motorist's negligence unless plaintiff's negligence was the proximate cause of the accident.

2. SAME—BARRICADE—NEGLIGENCE.

Employees whose work requires them to be in or upon public streets and also requires obstructions in or about such streets which otherwise would be in violation of law are not necessarily guilty of negligence in performing their work, their duty being to take reasonable precautions to guard against possible injury resulting from such unusual conditions.

3. SAME—REPAIR WORK—EXTRA WIDTH LOADS—CONTRIBUTORY NEGLIGENCE.

In action by employee of road contractor, engaged in widening pavement and repairing broken and damaged places in old pavement, for injuries sustained when load of wire reinforcing mesh, loaded on trailer beyond legal limit for width of vehicles on public highways, caught on defendants' truck, neither plaintiff nor his employer *held*, under record presented, guilty of negligence as a matter of law in using portion of road under construction for moving such tools, equipment and materials as were customary and required in the repair or construction work (1 Comp. Laws 1929, § 4728[a]).

4. SAME—REPAIRS—DUE CARE.

Employee engaged in repairing a highway is bound to use reasonable care for his own safety.

5. SAME—ROAD CONTRACTORS—SAFETY OF EMPLOYEES.

A road contractor, engaged in adding a strip of concrete at the side of a paved highway and repairing broken and damaged sections of the old paving, is bound to use reasonable care for the safety of his employees and anyone else lawfully on such highway.

6. SAME—REPAIRS—STATUTES—CONTRIBUTORY NEGLIGENCE—TRUCKS
   —QUESTIONS OF FACT.

    In action by plaintiff, road contractor's employee injured when
   riding on load of wire reinforcing mesh, loaded in excess of
   lawful width, caught on defendants' passing truck, question
   of whether excessive width of load of wire mesh, or unreason-
   able rate of speed of defendants' truck, or failure of its driver
   to go seasonably on shoulder of the road when he had a clear
   view of load of mesh for 200 feet was proximate cause of
   accident *held*, question of fact properly submitted to jury
   where fact that road was under repair was indicated by signs
   and mishap took place about noon on a level road (1 Comp.
   Laws 1929, § 4728[a]).

    WIEST, C. J., and SHARPE and POTTER, JJ., dissenting.

Appeal from Monroe; Golden (Clayton C.), J.
Submitted January 13, 1938. (Docket No. 21, Cal-
endar No. 39,341.) Decided April 4, 1938. Rehear-
ing denied June 14, 1938.

Case by Maurice C. Van Wormer against Kramer
Brothers Freight Lines, Inc., a corporation, and
Arthur Gapske for damages for personal injuries
sustained when truck on which plaintiff was riding
was struck by defendants' truck. Verdict for plain-
tiff. Judgment for defendant *non obstante veredicto.*
Plaintiff appeals. Reversed and remanded for entry
of judgment for plaintiff.

*Walter M. Nelson,* for plaintiff.

*Edward N. Barnard,* for defendants.

CHANDLER, J. I believe that the case of *Haszczyn*
v. *Detroit Creamery Co.,* 281 Mich. 467, controls the
present controversy. In that case, 1 Comp. Laws
1929, § 4056 (Stat. Ann. § 9.266), was under consid-
eration and it was held that the violation of the
statutory provision did not bar plaintiff's recovery

unless such negligence was the proximate cause of the accident and that, in view of the perfectly apparent conditions in the street, defendant was liable for heedlessly and negligently causing plaintiff's injuries. The following language from that case (p. 471) is appropriate to the present situation:

"The height of defendant's truck was nine feet four and a half inches, and at the point which contacted the rope the height was about two inches less. It is defendant's contention that the proximate cause of plaintiff's injury was the stretching of the rope under plaintiff's direction across the street in violation of the above quoted statute. If there were no qualifying circumstances disclosed by the testimony, defendant's contention that violation of the statutory provision was negligence *per se* on the part of plaintiff and a bar to recovery would be sound. But that result does not follow unless such negligence was the proximate cause of the accident. *Arvo* v. *Delta Hardware Co.*, 231 Mich. 488; *Cothran* v. *Benjamin Cleenewerck & Son*, 235 Mich. 351. Under this record it cannot be said as a matter of law that such negligence was a proximate cause of plaintiff's injury.

"Employees whose work requires them to be in or upon public streets and also requires obstructions in or about such streets which otherwise would be in violation of law, are not thereby necessarily guilty of negligence in performing their work. But such employees must take reasonable precaution and use reasonable means to guard against possible injury resulting from such unusual conditions. In the instant case it was clearly a question of fact as to whether plaintiff complied with this requirement. If he did, then placing the rope across the street was not in law a proximate cause of this accident, otherwise it was a proximate cause."

In the instant case, as in *Haszczyn* v. *Detroit Creamery Co., supra,* the work being carried on was

work incident to keeping the public highways of the State in a condition of safety and convenience for public travel. It was necessary that this work should be done in and upon the public highways. Under the circumstances disclosed by this record, the court cannot say as a matter of law that neither the plaintiff nor his employer had the right to use such tools, equipment and materials as were customary and required in such repair or construction work, and to move the same where necessary on that part of the road under construction. True, plaintiff was bound to use reasonable care for his own safety. His employer was bound to use reasonable care for the safety of his employees and anyone else who was lawfully on said highway. Timely and ample warning was given defendants and all others who might desire to use this highway that it was undergoing repair and construction work. It is apparent that the wire reinforcing mesh was being transported in the usual and customary way. Under the circumstances, an issue of fact was fairly presented as to whether the unlawful * width of the mesh contributed to the accident or whether the unreasonable rate of speed of defendants' truck, or the failure of the driver to go seasonably on the shoulder of the road when he had a clear view of the tractor, trailer and load of mesh for 200 feet, constituted the sole cause of plaintiff's injuries.

Reversed and remanded for entry of judgment on the verdict rendered, with costs to plaintiff.

BUTZEL, BUSHNELL, NORTH, and McALLISTER, JJ., concurred with CHANDLER, J.

---

* See 1 Comp. Laws 1929, § 4728(a) (Stat. Ann. § 9.1596).—REPORTER.

Potter, J. (*dissenting*). Plaintiff sued defendants to recover damages claimed to have been suffered from personal injuries resulting from a collision between motor vehicles on the public highway. From judgment for defendants, plaintiff appeals.

In 1935, the State authorized R. D. Baker Company, a road contractor, to construct a 10-foot paved strip on the west side of the pavement on Telegraph road which runs north and south and is a Federal and State trunk line, and to replace broken and damaged sections of the old paving. The construction job was about 11 miles long. The west shoulder of the highway was soft and rough, but the east shoulder was in fair condition for travel around the newly repaired sections to a width of about 10 feet. Signs indicated the road was under construction and limited speed of trucks to 15 miles an hour. The accident occurred September 23, 1935. There had been no legal action closing the highway or otherwise regulating the speed of motor vehicles thereon. Defendants' truck was legally upon the highway. Truck traffic was allowed thereon, though passenger cars were rerouted. The road at the point of accident was level and straight. The collision occurred in broad daylight shortly after noon.

On the morning of the day in question, plaintiff was instructed to go with Lowe, and Phillips who was the driver of a tractor, to collect wire mesh that had been distributed along the new strip of pavement north of Erie, Monroe county, which had not been used, and to deliver the mesh for use in the repair of sections of the old pavement. The parties drove to the northerly limit of the construction job and, coming south, loaded the wire mesh on a flat trailer attached to the tractor. This wire mesh was 9½ by 13 feet, and a pile of 25 pieces stood up 2½ or 3 feet

above the bed of the trailer. Phillips drove the tractor. Lowe and plaintiff loaded the mesh and rode on top thereof when the vehicle was in motion, Phillips helping occasionally with the work of loading. The tractor and trailer stood on the shoulder east of a barricaded patch, facing south, when the men unloaded, and just before the accident the tractor and trailer were in that position opposite the barricaded repair patch on the highway. There was another repair patch 250 feet south which plaintiff testified was barricaded, though defendant Gapske denied it. Phillips started up the Baker tractor and flat trailer and headed southwest. He testified:

"My truck was approximately right in the middle of the pavement in the middle 10-foot strip.   *   *   * All the wheels of the semi-trailer were on the pavement at that time."

Plaintiff claimed the Baker tractor and trailer were traveling 8 to 10 miles an hour and had gone but a few feet at the time of the collision. He claimed defendants' tractor and semi-trailer were going 30 miles an hour. The mesh, loaded upon the trailer upon which plaintiff was riding, as it passed defendants' trailer, caught the rear-view mirror bracket of defendants' vehicle and five mats of mesh were pulled to the ground and plaintiff injured. Defendants' truck stopped 30 to 35 feet from the place of collision.

The driver of defendants' tractor and semi-trailer saw plaintiff's tractor and trailer when three-quarters of a mile away. He saw the mesh hanging over the edge of the load when approximately 200 feet away. He turned off to the right on the shoulder of the highway, his left wheels being on the east edge of the east strip of pavement. Plaintiff received serious injuries.

At the close of plaintiff's proof, defendants moved for a directed verdict of no cause of action on the grounds no negligence was shown on the part of defendant Gapske and plaintiff was guilty of contributory negligence as a matter of law in loading the wire mesh 9½ feet in width on his employer's trailer when he had knowledge the trailer was to be driven and moved on the public highway. The court reserved decision on this motion and it was renewed at the close of all the proof. The court took the motion under advisement under the Empson act (3 Comp. Laws 1929, § 14531 *et seq.* [Stat. Ann. § 27.1461 *et seq.*]), submitted the case to the jury which returned a verdict of $5,000 for plaintiff, and, after argument, defendants' motion for judgment notwithstanding verdict was granted on the ground plaintiff did not show actionable negligence on the part of defendants by a preponderance of the evidence and did not show he was free from contributory negligence. Plaintiff appeals on the ground the trial court erred in ruling plaintiff did not establish defendants' actionable negligence and absence of contributory negligence on his part.

The width of the load on plaintiff's trailer was conceded to have been 9½ feet. The statutes provide:

"No vehicle shall exceed a total outside width, including any load thereon, of ninety-six inches, excepting that the width of a farm tractor shall not exceed nine feet, and excepting further, that the limitations as to size of vehicles stated in this section shall not apply to implements of husbandry temporarily propelled or moved upon the public highway." 1 Comp. Laws 1929, § 4728 (a) (Stat. Ann. § 9.1596).

"It shall be unlawful and constitute a misdemeanor for any person to violate any of the provi-

sions of this act unless such violation is by this act or other law of this State declared to be a felony.'' 1 Comp. Laws 1929, § 4745 (a) (Stat. Ann. § 9.1614).

The wire mesh was piled uniformly on the truck, overhanging on either side.

Plaintiff contends defendant Gapske saw the truck, the mesh hanging over the side and two men riding on it, and continued at the same rate of speed; that this constituted actionable negligence on the part of the driver of defendants' truck because he continued to go forward when there was obvious danger which probably would result in a collision. It is by no means clear, upon a consideration of all the testimony, that the driver of defendants' truck was guilty of any negligence, but for the purposes of disposing of this case, we proceed upon the theory that defendants' driver was negligent.

Plaintiff contends this court has lately ruled that governmental agencies are not liable for violations of 1 Comp. Laws 1929, § 4728 (Stat. Ann. § 9.1596) in the performance of governmental functions like the building of a highway or keeping it in order. There is no doubt the State is not ordinarily liable for negligence in constructing and repairing highways. *Heino* v. *City of Grand Rapids,* 202 Mich. 363 (L. R. A. 1918 F, 528); *Gunther* v. *Cheboygan County Road Commissioners,* 225 Mich. 619; *Johnson* v. *Ontonagon County Road Commissioners,* 253 Mich. 465. It is quite another thing to say that such a principle of law can be stretched to cover the employee of any contractor engaged by the State to build or repair highways, or that such employees may violate the statutes above mentioned with impunity. Plaintiff helped load the wire mesh on the truck and was a principal in the violation of the statute. 3 Comp. Laws 1929, § 17253 (Stat. Ann.

§ 28.979). Plaintiff claims this case is governed by *Haszczyn* v. *Detroit Creamery Co.*, 281 Mich. 467. In that case, the statute (1 Comp. Laws 1929, § 4056 [Stat. Ann. § 9.266]) forbade the placing of wires or cables across the street at a less height than 15 feet above any part of the traveled portion of the road. The rope in question was less than 15 feet from the traveled portion of the highway. It was held plaintiff's negligence in placing the rope across the street was not, under the facts, as a matter of law the proximate cause of the injury. There was no question about plaintiff having negligently placed the rope. But there was testimony a workman was stationed by plaintiff to warn traffic, the workman signaled the driver of defendant's truck when 400 feet away, the truck driver saw the signal, saw the rope, knew of plaintiff's precarious position, but recklessly drove against the rope at a high rate of speed and caused the injuries of plaintiff. It was held substantially that the precedent negligence of plaintiff, though a contributory cause of the injury, did not bar recovery as a matter of law because of the testimony of independent subsequent negligence on the part of the defendant. In that case, there was a clear-cut dissent from the holding of the majority.

Though an employee is bound to obey the lawful orders of his employer, he is not justified in violating the law upon the orders of his employer. Plaintiff assisted in loading the mesh and must be presumed to know that when placed upon the trailer it, being $9\frac{1}{2}$ x 13 feet, would necessarily exceed the 96 inches allowed by statute as the width of the load. There is nothing in this case to relieve plaintiff from the consequences of his violation of the statute.

This case is to be distinguished from *Hanser* v. *Youngs*, 212 Mich. 508; *Beebe* v. *Hannett*, 224 Mich.

88; *Arvo* v. *Delta Hardware Co.,* 231 Mich. 488; *Gleason* v. *Lowe,* 232 Mich. 300; *Sahms* v. *Marcus,* 239 Mich. 682; and *Haszczyn* v. *Detroit Creamery Co., supra.* In those cases, it was for the jury to determine whether the violation of the statute bore a causal relation to the accident. In this case, the testimony is clear that the overhanging mesh hooked on to the rear-view mirror bracket of defendants' truck. The causal relation is established by all the testimony. Plaintiff's negligence and violation of the law were direct causes of the accident. The trial court properly entered a judgment notwithstanding the verdict.

Plaintiff seeks to distinguish a crime from a misdemeanor and contends 3 Comp. Laws 1929, § 17253 (Stat. Ann. § 28.979), applies only to crimes. In *Slaughter* v. *People,* 2 Doug. (Mich.) 334, it is said:

" 'A crime or misdemeanor,' says Blackstone, 'is an act committed, or omitted, in violation of a public law, either forbidding or commanding it:' 4 Blackstone's Commentaries, p. 5. It will be perceived that this definition is applicable both to crimes and misdemeanors, which, says the same eminent author, 'properly speaking, are mere synonymous terms; though, in common usage, the word *"crimes"* is made to denote such offenses as are of a deeper and more atrocious dye; while smaller faults and omissions of less consequence, are comprised under the gentler name of "misdemeanors" only.' "

In *People* v. *Hanrahan,* 75 Mich. 611, 619 (4 L. R. A. 751), it is said:

"The word 'crime' is applicable to both a felony and 'misdemeanor.' So the words 'offense' and 'crime' are synonymous, when applied to convictions for violations of statutes of a public nature. *People,*

*ex rel. Kopp,* v. *New York Board of Police Commissioners,* 39 Hun (46 N. Y. Sup. Ct.), 507; *People, ex rel. Kopp,* v. *French,* 102 N. Y. 583 (7 N. E. 913). The words are used interchangeably in our compilations. Whenever a person does an act which is prohibited by law, which act is punishable by fine, penalty, forfeiture, or imprisonment, he commits a crime.''

The general rule is thus stated in 16 C. J. p. 51:

''Although the word 'crime' has sometimes been used to designate a gross violation of law as distinguished from a mere misdemeanor, in its broadest sense it applies to any violation of law which is punished by the State in a criminal prosecution, and therefore, it has been repeatedly held, includes misdemeanors.''

3 Comp. Laws 1929, § 17253 (Stat. Ann. § 28.979), provides:

''Every person concerned in the commission of an offense, whether he directly commits the act constituting the offense or procures, counsels, aids, or abets in its commission may hereafter be prosecuted, indicted, tried and on conviction shall be punished as if he had directly committed such offense.''

There were at common law no accessories in misdemeanors. 4 Blackstone's Commentaries, p. 36. When the performance of any act is prohibited by statute, though no penalty for the violation of such statute is imposed, the doing of the act is a misdemeanor. Act No. 328, § 9, 1931 (Comp. Laws Supp. 1935, § 17115–9, Stat. Ann. § 28.199). And every misdemeanor for which a punishment is not prescribed by statute is punishable under Act No. 328, § 504, 1931 (Comp. Laws Supp. 1935, § 17115–504, Stat. Ann. § 28.772).

Plaintiff claims that inasmuch as Telegraph road is a Federal trunkline highway, defendants were engaged in interstate commerce and the operation of the State law imposing a 96-inch limitation on the width of a load was a burden on interstate commerce. Defendants do not, and plaintiff may not, raise this question. Plaintiff also contends that because the State accepted Federal aid in improving a part of this Federal trunk line highway, it may not by statute regulate the size and weight of motor trucks using such highway. Unreasonable State regulations or restrictions are invalid. *Barnwell Bros., Inc.,* v. *South Carolina State Highway Dept.,* 17 Fed. Supp. 803. It is a general rule, that in the absence of national legislation covering the subject, the State may rightfully prescribe uniform regulations necessary for public safety and order in respect to the operation upon its highways of all motor vehicles, those moving in interstate commerce as well as those moving in intrastate commerce. 2 Cooley's Constitutional Limitations (8th Ed.), p. 1284. As said in *Morris* v. *Duby,* 274 U. S. 135, 143 (47 Sup. Ct. 548) :

"In the absence of national legislation especially covering the subject of interstate commerce, the State may- rightly prescribe uniform regulations adapted to promote safety upon its highways and the conservation of their use, applicable alike to vehicles moving in interstate commerce and those of its own citizens."

In *Sproles* v. *Binford,* 286 U. S. 374, 388 (52 Sup. Ct. 581), it is said:

"The State may also prevent the wear and hazards due to excessive size of vehicles and weight of load. Limitations of size and weight are manifestly sub-

jects within the broad range of legislative discretion. * * * When the subject lies within the police power of the State, debatable questions as to reasonableness are not for the courts but for the legislature, which is entitled to form its own judgment, and its action within its range of discretion cannot be set aside because compliance is burdensome."

See, also, *Pine* v. *Okzewski*, 112 N. J. Law, 429 (170 Atl. 825); *State* v. *Goeson*, 65 N. D. 706 (262 N. W. 70); *Avery* v. *Interstate Grocery Co.*, 118 Okla. 268 (248 Pac. 340, 52 A. L. R. 528); *Meyers* v. *Railroad Commission*, 218 Cal. 316 (23 Pac. [2d] 26); *Northern Kentucky Transportation Co.* v. *City of Bellevue*, 215 Ky. 514 (285 S. W. 241).

We think plaintiff precluded, by his own contributory negligence, from recovering. The trial court was correct.

Judgment should be affirmed, with costs.

WIEST, C. J., and SHARPE, J., concurred with POTTER, J.